The MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMIS-SION et al., Plaintiffs,

v.

Lt. Gen. Abner B. MARTIN et al., Defendants.

Civ. A. No. 78–0060.

United States District Court, District of Columbia.

March 13, 1978.

Gus Bauman, Associate Gen. Counsel, Silver Spring, Md., William S. Green, Bethesda, Md., Edward C. Berkowitz, Lane & Edson, Myron Walker, James R. Rosa, Washington, D. C., for plaintiffs.

Robert M. Werdig, Jr., Washington, D. C., for defendants.

MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

This is an action in which plaintiffs[1] seek to restrain the Director of the Defense Mapping Agency ("DMA") and the Secretary of Defense from effectuating the consolidation and collocation of the DMA Hydrographic Center ("DMAHC") and the DMA Topographic Center ("DMATC") at the DMATC headquarters located in Brookmont, Maryland. The case was consolidated for hearing on preliminary and final relief, and the matter is before the Court on the parties' cross-motions for summary judgment.[2] For the reasons discussed below, the Court finds that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law.

DMAHC designs and produces hydrographic maps and charts for the United States Navy and Merchant Marine. DMAHC is presently located in Suitland, Prince George's County, Maryland, and employs some 750 military and civilian personnel. DMATC designs and produces topographic maps and charts for the United States Army and Air Force. DMATC occupies facilities on two sites within one mile of each other situated in Brookmont, Montgomery County, Maryland. DMATC presently employs between 2,300–2,400 military and civilian personnel and has occupied its Brookmont facilities continually since 1943. Since 1971, employment at Brookmont has declined.

On October 27, 1976, DMA requested approval of the Office of the Secretary of Defense to study the feasibility and desirability of consolidating the operations of DMAHC and DMATC. Approval was granted and a Study Group was appointed to consider the question. Between March and April 1977, DMA notified local government officials, including the Prince George's County and Montgomery County Executives and the State Planning Department of Maryland, of the matter under consideration. On June 28, 1977, the DMAHC–DMATC Consolidation Study, which included an Environmental Impact Assessment ("EIA"), was submitted to the Director of DMA. On July 21, 1977, the Director endorsed the findings of the Study Group, concluded that preparation of an Environmental Impact Statement ("EIS") was not required, and determined that DMAHC and DMATC should be consolidated at the DMATC headquarters in Brookmont. The Secretary of Defense approved the proposed consolidation on August 5, 1977. At that time Congress was notified of the consolidation decision, as were DMAHC and DMATC employees. On August 10, 1977, DMA published a notice of the decision in the Federal Register and invited comments.

Some formal comments arguing against the proposed consolidation were received. Other protests took the form of employee petitions, letters to Congressmen, and letters to the Director of DMA. The Washington Post and the Montgomery Sentinel ran stories on the opposition to the proposed move. On October 17, 1977, DMA began the phased implementation of the consolidation plan. In November and December meetings were held between DMA and concerned citizens and their representatives. DMA continued to maintain that an EIS was not required and that the consolidation would proceed. In January 1978, the Assistant Secretary of Defense for Manpower Reserve Affairs and Logistics refused to halt the project. Plaintiffs filed the instant lawsuit on January 13, 1978. Actual trans-

---

1. Plaintiffs include the regional planning agency charged with zoning responsibilities for the Brookmont area, various civic associations and area residents, and the local union representing Defense Mapping Agency employees affected by the proposed transfer and consolidation.

2. Defendants have moved in the alternative to dismiss the action. The Court has reviewed defendants' claim with respect to the standing of certain plaintiffs herein, with respect to the deposition of the Potomac Valley League, with respect to laches or failure to exhaust administrative remedies, and with respect to Rule 12(b)(6) of the Federal Rules of Civil Procedure, but is not persuaded that this action should be dismissed.

fer of the bulk of DMAHC employees and their furniture and equipment is not scheduled until September 1978.

■ The issue in this case [3] is whether DMA's decision to move forward on consolidation without preparation of an EIS violates the procedural requirements of the National Environmental Policy Act of 1969 ("NEPA") [4] and relevant regulations issued by the Council on Environmental Quality ("CEQ Guidelines") [5] and regulations of the Department of Defense ("DOD Regulations"). [6] The Court approaches this issue within the framework for review established by the Administrative Procedure Act. The Court's inquiry is limited to a determination of whether DMA's decision to forego an EIS was arbitrary, capricious, or an abuse of discretion. *Hanly v. Kleindienst*, 471 F.2d 823, 830 (2nd Cir. 1972); *Maryland National Capital Park and Planning Commission v. U.S. Postal Service*, 159 U.S.App. D.C. 158, 164, 487 F.2d 1029, 1035 (1973). The specific questions before the Court in judging the propriety of DMA's actions are whether the DMAHC–DMATC consolidation constitutes major Federal action which significantly affects the quality of the human environment around Brookmont and whether the environmental impact of the proposed consolidation is highly controversial.

The Court is persuaded that DMA's proposal to consolidate DMAHC and DMATC at the DMATC headquarters located at Brookmont, Maryland, is not a major Federal action significantly affecting the quality of the human environment around Brookmont. At the outset, the Court has difficulty classifying the proposed consolidation as a major Federal action. The Court is aware of the very broad construction which courts have afforded the phrase "major Federal action." See *Rucker v. Willis*, 484 F.2d 158, 163 (4th Cir. 1973); *S. W. Neighborhood Assembly v. Eckard*, 445 F.Supp. 1195 (D.D.C.1978). However, this Court is not convinced that the transfer and consolidation of personnel and equipment at issue in this case, involving a limited number of people, minimal time to effect, and no new construction, is the sort of Federal action which Congress had in mind in enacting Section 102(2)(C) of NEPA. The consolidation herein appears comparable to the hiring of additional personnel at a Government facility operating at less than peak employment levels. Such an increase of personnel would not qualify as "major Federal action."

Furthermore, the Court is satisfied that DMA's conclusion that the proposed move would not entail a significant impact on the Brookmont environment is sustainable on the record in this matter. Consolidation at the DMATC site is in no way inconsistent with zoning and land use in the Brookmont area. The move does not involve the construction, enlargement or demolition of buildings or any other construction project, nor the construction or rerouting of any

---

3. Plaintiffs have also argued herein that DMA has violated the terms of Executive Orders Nos. 11512 (see 35 F.R. 3979, March 3, 1970) and 11514 (see 35 F.R. 4247, March 7, 1970) by failing to consult with the local planning agency (MNCPPC) before reaching the decision to consolidate. The Court is satisfied that local authorities were consulted and that DMA was aware of the views of MNCPPC with respect to this matter, albeit belatedly. Moreover, the Court has doubts whether failure to comply with these Executive Orders is judicially cognizable.

4. Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(c) requires federal agencies to

Include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action . . .

5. See 42 C.F.R. § 1500.6(a). The CEQ Guidelines indicate that an EIS should be prepared where the environmental impact of proposed major actions is likely to be highly controversial.

6. See C.F.R. § 214.7. The DOD Regulations incorporate the recommendations of the CEQ Guidelines.

roadways, nor any substantial increase in traffic in the affected region, nor the acquisition of any new land. The Brookmont facilities will continue to be used as those facilities have been used since 1943 and employment levels at the site after the consolidation is completed will be lower than employment levels in previous years.[7]

DMA considered the various environmental factors involved in the proposed move, including the effect on traffic in the Brookmont area, on sewage and solid waste control, and on noise and air pollution levels.[8] The Court is persuaded that DMA gave the environmental problem the requisite "hard look," identified the relevant areas of concern, and reasonably concluded that the environmental impact of the proposed consolidation would be insignificant.[9] DMA's examination of the environmental issues was substantial[10] and was conducted fully and in good faith. This Court will not substitute its judgment for that of the agency here.[11]

Lastly, the Court finds that the environmental impact of the proposed consolidation does not amount to the sort of "highly controversial" impact which the CEQ Guidelines and the DOD Regulations indicate requires preparation of an EIS. The impact of the proposed move is local and the dispute over the environmental impact herein does not rise beyond the level of neighborhood opposition.[12]

The Court concludes that DMA's determination to forego preparation of an EIS in connection with the proposed consolidation of DMAHC and DMATC at DMATC's Brookmont headquarters was not arbitrary,

7. In June 1967, for e. g., employment at the Brookmont site totalled 3,444 persons. Transfer of DMAHC personnel will add between 600 to 700 people to a present work complement of 2,300–2,400 employees at DMATC.

8. See, for e. g., the discussion set out in the DMA Study Group's Environmental Assessment.

9. For an analysis of the relevant factors to be considered by the Court in assessing an agency's treatment of environmental issues, see *Maryland National Capital Park and Planning Commission v. U.S. Postal Service,* supra, 159 U.S.App.D.C. at 169, 487 F.2d at 1040; *Hanly v. Kleindienst,* supra, at 831. Two recent cases from this jurisdiction have some application to the present controversy: *S.W. Neighborhood Assembly v. Eckard,* supra, and *Prince George's County v. Schlesinger,* Civil Action No. 75–0590 (D.D.C. November 7, 1975). In examining these cases, the Court is persuaded that the present lawsuit more closely approaches the situation in the Prince George's County case and that the treatment of the environmental issues by the Court in that case is more applicable to this action. However, the Court notes that determination of an agency's compliance with the NEPA requirements depends upon the particular facts of the case at hand.

10. DMA's consideration of problems attendant to the proposed move extended over a considerable period of time. Local authorities and citizenry and concerned employees did have input in the process. While this input may not have been as great as plaintiffs would have liked, nonetheless plaintiffs had ample opportunity to make their views on the consolidation known to DMA. As the Court stated in *Hanly,* supra, at 831, NEPA mandates no specific type of procedure to be followed by the agency in assessing the environmental impact of proposed action. This Court is satisfied with the procedures utilized by DMA in this case.

11. Plaintiffs take issue with DMA's study and a number of its conclusions. Plaintiffs say that DMA's traffic figures are wrong, that its conclusions about solid waste disposal are inadequate, that its position on sewage is inaccurate, and that a number of important factors were not considered, including the safety threat posed to the Brookmont area by increased traffic and the need for additional secondary community development services and facilities created by the proposed move. All of these claims have been argued before the agency at some point during this controversy and DMA has rejected plaintiffs' arguments and steadfastly maintained that the environmental impact of the DMAHC–DMATC consolidation is insignificant and that no EIS need be prepared. Plaintiffs want to explore the underlying basis and documentation for each of DMA's conclusions on environmental effect, but nothing in NEPA or the case law applying the Act warrants such a far-ranging inquiry. This Court is satisfied with DMA's examination of the environmental issues on these facts and finds DMA's conclusion that no significant environmental impact is involved to be supported by the record.

12. See *Rucker v. Willis,* supra, at 162; *Hanly v. Kleindienst,* supra, at 830; *Fund for Animals v. Frizzell,* 174 U.S.App.D.C. 130, 137, 530 F.2d 982, 989 fn. 15 (1976).

354

capricious, an abuse of discretion or otherwise unlawful. Therefore summary judgment must be entered for Defendants in this case.