CABINET MOUNTAINS WILDER-
NESS/Scotchman's Peak Grizzly
Bears et al., Plaintiffs,

v.

R. Max PETERSON, in his official capacity as Chief Forester of United States Forest Service, Department of Agriculture et al., Defendants;

Asarco Incorporated, Intervening
Defendant.

Civ. A. No. 80–2450.

United States District Court,
District of Columbia.

April 15, 1981.

Karin P. Sheldon, Washington, D. C., for plaintiffs.

David B. Orlean, Maryann Walsh, Dept. of Justice, Washington, D. C., for defendants.

R. Brooke Jackson, Washington, D. C., for intervening defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This case involves a challenge to a decision by the United States Forest Service approving a mineral exploration program by a private company, ASARCO, in the Cabinet Mountains Wilderness area of northwest Montana. The matter is before the Court on cross-motions for summary judgment filed by the plaintiffs, the defendants, and intervenor ASARCO. The issues have been exhaustively briefed and oral argument has been heard.

The positions of the parties can be stated fairly succinctly. The plaintiffs assert that the exploratory drilling area is inhabited by a small, isolated population of approximately a dozen grizzly bears, which is listed as a threatened species, 50 C.F.R. § 17.11(h) (1980), under the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.* Approval of the exploration program, plaintiffs contend, violated the government's responsibilities under the Endangered Species Act to ensure that the government does not authorize, fund, or carry out any activity that is likely to jeopardize the continued existence of the grizzlies and to take affirmative steps to protect, conserve, and restore grizzlies to a level that would permit their removal from the Endangered Species list. Plaintiffs also contend that the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, and the regulations of the Council on Environmental Quality require that the Forest Service prepare an environmental impact statement before approving such a

project, and that because this was not done the approval was not lawful.

The government disputes both of these contentions. Defendants modified the proposed drilling plan in order to accommodate concerns for the grizzlies raised in a Biological Opinion rendered by the Fish and Wildlife Service, and defendants assert that these modifications, plus the additional programs conducted by the government to aid populations of grizzlies, meet all the requirements of the Endangered Species Act. Furthermore, defendants assert that an environmental impact statement was not required in this case because the environmental assessment statement prepared by the Forest Service properly found that the drilling project, as modified, would have "no significant impact" and thus the assessment statement alone sufficed to meet the NEPA requirements.

ASARCO, who intervened in this case to protect its interests as the drilling permittee, goes even further than the defendants in opposing plaintiffs' position. ASARCO not only argues that there has been compliance with the Endangered Species Act and NEPA, but also suggests that there is no reliable evidence that grizzly bears inhabit this portion of the Montana wilderness and thus plaintiffs' concerns are baseless.

The facts concerning the government's review of the ASARCO drilling project are not in dispute and have been set forth in great detail in the papers submitted by the parties. Only a brief summation is necessary here. The Cabinet Mountains Wilderness area consists of approximately 94,272 acres in northwestern Montana. ASARCO holds a claim block totaling 2,980 acres, most of it in the Wilderness area. Exploration in the ASARCO area has taken place since the 1960's, and some drilling occurred during the 1960's and 1970's on portions of the claim block outside the Wilderness area.

In 1979, ASARCO sought to begin exploratory drilling within the Wilderness area. There was a substantial review of the proposal by the Forest Service, in consultation with the Fish and Wildlife Service, and ultimately approval was given. Four holes were drilled during the period from July to November, 1979, and the environmental impacts of the project were closely monitored and studied. In February, 1980, ASARCO proposed an expanded program of exploratory drilling to take place during the temperate months of 1980 through 1983. The project is intended to meet the time constraints placed on ASARCO by the Wilderness Act, 16 U.S.C. § 1133(d)(3) (1976), which requires that ASARCO prove no later than December 31, 1983, that the claim block contains an economically significant body of ore or else lose certain rights to the claim area.

The specific drilling program for 1980 proposed 36 drill holes on 22 sites. Approximately the same level of drilling activity was proposed for the subsequent three years, although no precise sites were indicated. After receiving the proposed plan, the Forest Service prepared an environmental assessment. During the preparation, the Forest Service sought input from individuals and groups interested in the area, received comments from well over 100 parties, and held several public meetings. Many of the plaintiffs in this case were involved in these administrative proceedings. Most importantly, the Forest Service requested that the Fish and Wildlife Service of the Department of the Interior prepare a Biological Opinion for the proposed drilling plan. The Fish and Wildlife Service did so and recommended a variety of mitigation efforts to reduce the negative environmental impacts of the project. These suggestions were incorporated into the final environmental assessment released by the Forest Service, and include a number of suggestions expressly addressed to minimizing the potential impact of the project on the grizzlies. These mitigation efforts include closing certain roads, regulating timber sales, restricting travel into and away from the drill area, and controlling activities at the drill site.

Based on this environmental assessment, the Forest Supervisor, William E. Morden, issued a "Decision Notice and Finding of No Significant Impact" on June 17, 1980. That decision stated, in part:

It is my decision to approve the plan of operations with modifications incorporating the mitigating provisions of this Environmental Assessment and the complete compensation plan prescribed in the biological opinion rendered by the Fish and Wildlife Service, USDI. This decision is displayed as Alternative 2 in the enclosed assessment and is modified to incorporate the Fish and Wildlife Service's compensation plan.

.    .    .    .    .

After thorough review of the operating plan, the Environmental Assessment with its mitigating measures and appendices, and the compensation plan from the U. S. Fish and Wildlife Service, I conclude that the impacts of the proposed activity are adequately assessed and that appropriate measures are initiated to insure that:
—The provisions of mineral regulations regarding location and exploration can be adequately met and carried out,
—The wilderness characteristics of the Cabinet Mountains Wilderness will be preserved,
— The continued existence of the grizzly bear is not threatened nor is its critical habitat adversely modified, and
—Other resource values of the area are adequately protected.

Because of the ultimate finding that there was "no significant impact" on the human environment, the assessment statement was sufficient and no environmental impact statement was required. Thereafter, ASARCO began its drilling program and a variety of environmental groups, including the plaintiffs here, appealed the decision through administrative channels. Those appeals were unsuccessful and this suit was filed on September 26, 1980.

The threshold matter that must be decided is the standard of review that is to be followed in considering plaintiffs' claim that approval of the ASARCO project violates the Endangered Species Act.[1] Plaintiffs contend that this Court should engage in essentially a *de novo* review of the agency action, assessing for itself whether there has been substantive compliance with the Act. The defendants and intervenor contend that the Court must follow the "arbitrary and capricious" standard set forth in the Administrative Procedure Act. The Court agrees that the arbitrary and capricious standard is appropriate. *Cayman Turtle Farm, Ltd. v. Andrus*, 478 F.Supp. 125 (D.D.C.1979). Although the Court of Appeals apparently has not addressed this precise question, its decision in *North Slope Borough v. Andrus*, 642 F.2d 549 (D.C.Cir. 1980), appears to adopt the arbitrary and capricious standard. In any event, plaintiffs cite no authority for their position and the Court is not prepared to substitute its views regarding environmental impacts— particularly where subjective value judgments are so entwined with scientific data—unless Congress has made it clear that the Court is to do so. Congress has not so indicated.[2]

Reaching the merits of the case, the Court finds that the defendants have met their burdens under both the Endangered Species Act and NEPA, that the decision to approve ASARCO's drilling project was not "arbitrary and capricious," that the relevant considerations were before the Forest Service and were properly taken into account, and that the Forest Service's decision must be upheld. It is clear that the Forest Service had before it a wide range of scientific material and public comment, and

1. The parties agree that the "arbitrary and capricious" standard of the Administrative Procedure Act is the proper standard of review on the NEPA issue. This standard was applied by this district court in *Maryland-National Capital Park & Planning Commission v. Martin*, 447 F.Supp. 350 (D.D.C.1978).

2. The parties disagree on one other matter as well. Plaintiffs have advanced for the Court's consideration some material that is not in the

administrative record; defendants and ASARCO contend that only the administrative record is properly before the Court. Because the additional material is primarily cumulative of evidence that was considered in the administrative proceedings, the Court finds that the material is not significant and it need not decide whether the material should be disregarded altogether.

that its final decision represented a considered judgment based on all of the information presented. Mitigation measures suggested by the Fish and Wildlife Service were incorporated into the final plan to reduce the impact of the drilling on the grizzlies, and the cumulative impact of the four-year project was considered to the limited extent possible.[3] With regard to NEPA, it is important to note that the government has approved only the exploratory drilling project proposed by ASARCO; there has been no approval of any mining program that might ultimately be presented. If and when there is a proposal for mining, further environmental studies will be required. *Cf. North Slope Borough v. Andrus, supra,* 642 F.2d at 593–594.[4] In meeting its obligations under the Endangered Species Act, it is clear that the Forest Service not only has imposed strict limits to ensure a minimum of intrusion on any grizzlies in the claim area, but continues to take a number of affirmative steps to bolster the survival of these animals. There was a specific finding by the Forest Supervisor that "[t]he continued existence of the grizzly bear is not threatened" by the project. The Court cannot say that the Forest Service has been remiss, either in failing to consider relevant evidence or in reaching its final conclusion. The decision will be upheld.

It is important to keep this case in perspective. This case is but one of an increasing number of challenges in which sincere groups seek to protect the environment and understandably object to any intrusion of industry into the national forests. Equally sincere groups oppose these challenges, recognizing the need to manage the forests and make use of the resources available in them when it is possible to do so with a minimum of intrusion. The disputes between these groups are partly political, partly philosophical, and go to the core of decisions on how this nation can best achieve a continuing vitality. But as this debate rages, the courts are confined to a very minor role.

In this case, for example, a federal judge sitting in Washington, D. C.,[5] is asked to

---

**3.** At oral argument defendants made it clear that there would be an annual review of ASARCO's proposed drilling sites and that further mitigation measures might be required, including denying the right to drill at specific sites. Such review also is assured in the Forest Service's Environmental Assessment Statement of June 17, 1980. All that the Forest Service has assured ASARCO to this stage is that the concept of a four-year project, with approximately 20 drill sites each year, is acceptable. The government can reject the details of any year's proposal, and plaintiffs will have an opportunity to comment on each annual submission by ASARCO.

**4.** Following oral argument in this case, the Council on Environmental Quality (CEQ) published in the *Federal Register* a Memorandum entitled "Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations." 46 Fed.Reg. 18026 (March 23, 1981). One of the questions and answers concerned whether mitigation measures could be relied upon to support a conclusion in an environmental assessment statement that a proposed project would have no significant impact. The CEQ memorandum stated that mitigation measures could be relied upon only if "they are imposed by statute or regulation, or submitted by an applicant or agency as part of the original proposal." Plaintiffs contended in a supplemental memorandum that this confirmed their argument that a full environmental impact statement was essential in this case. The Court declines to accept this argument. The CEQ's question-and-answer are not at all evident from the underlying regulations, and although the agency's interpretation of its regulations is entitled to deference, the Court will not apply this gloss to the regulations retroactively in this instance. The ASARCO exploration is an on-going project approved nine months prior to publication of this interpretation. In any event, the necessary mitigation measures were proposed by the Fish and Wildlife Service and ordered to be integrated into the drilling plan as accepted by the Forest Service. The entire operation will take place on federal land, which enhances the certainty that the measures will be enforced. Furthermore, the environmental assessment in this case was prepared after extensive public comment, consultation with other agencies, and consideration of alternatives. Under all the circumstances, the Court adheres to its determination that the Forest Service complied with the letter of the relevant regulations and the spirit of the National Environmental Policy Act.

**5.** It must be noted that a motion for a transfer of venue to the United States District Court for the District of Montana was denied by this Court on January 22, 1981.

speculate on whether there are any grizzly bears in a portion of Montana and whether holes drilled into a mountainside will frighten those bears away. That is not a task judges are equipped to perform, and, in any event, it is not a task they should perform. Congress has established agencies and prescribed procedures for resolving these questions, and all that a court can do is to make certain that the agencies take their responsibilities seriously and perform them conscientiously. The courts cannot make substantive value judgments. It is manifestly clear that in this case the Forest Service and other participating agencies did take their responsibilities seriously and the resulting decision will be accepted as amply supported by the record.

Plaintiffs' motion for summary judgment is denied. Defendants' and intervenor's motions for summary judgment are granted. The Clerk of Court shall enter judgment accordingly.

So ordered.