PARK COUNTY RESOURCE COUNCIL, INC., a non-profit corporation; Stan Siggins, an individual; Lloyd Zeman, an individual, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, United States Forest Service; Stephen P. Mealey, in his official capacity as supervisor of the Shoshone National Forest; Bureau of Land Management; Department of the Interior of the United States; Hilery Oden, in his official capacity as State Director of the Bureau of Land Management, Defendants,

and

Marathon Oil Company, Amerada Hess Corporation, and Rosewood Resources, Inc., Defendants-Intervenors.

No. C85–0208–B.

United States District Court, D. Wyoming.

July 25, 1985.

---

Patrick J. Marley, (pro hac vice), Cole & Marley, Los Angeles, Cal., Don W. Riske, Cheyenne, Wyo., for plaintiffs.

Richard A. Stacy, U.S. Atty., and Carole A. Statkus, Asst. U.S. Atty., Cheyenne, Wyo., Marla Mansfield, Regional Sol., U.S. Dept. of Interior, Denver, Colo., for Federal defendants.

Stanley K. Hathaway, Hathaway, Speight & Kunz, Cheyenne, Wyo.; and Charles L. Kaiser (pro hac vice), Davis, Graham & Stubbs, Denver, Colo., for defendants-intervenors.

## MEMORANDUM OPINION

BRIMMER, Chief Judge.

This case arises from plaintiffs' contention that the Bureau of Land Management issued an oil and gas lease, and later granted an Application for Permit to Drill (APD), in violation of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq. By the July 1, 1985 Order of this Court, plaintiffs' motion for a Temporary Restraining Order on the granting of the APD was denied. To allow plaintiffs an opportunity to address the issues more fully, the Court then held a hearing on plaintiffs' motion for preliminary injunction, which with the agreement of counsel, the Court consolidated into a full hearing on the merits. Fed.R.Civ.P. 65(a)(2). At the conclusion of the evidence and final arguments, the Court concluded that plaintiffs failed to carry their burden of proof both for the preliminary injunction and upon the merits of the case, and orally denied plaintiffs' motion and dismissed their claims with prejudice. This memorandum opinion confirms the oral Order and more fully sets out the reasoning of the Court.

On July 9, 1982 the Bureau of Land Management (BLM) decided to issue Federal Oil and Gas Lease W–73230 to defendant-intervenors, which lease encompasses multiple-use lands in the Shoshone National Forest. The lease contains a number of stipulations and surface use restrictions which, together with applicable Department of the Interior regulations, required the conduct of additional environmental studies and approval by the United States before any exploration or development activities could be conducted on the lease. Neither plaintiffs nor any other party challenged the BLM's proposed issuance of this lease, nor appealed the BLM decision to the Interior Board of Land Appeals (IBLA).

On June 21, 1983 intervenor Marathon Oil Company, the designated operator for the lease, submitted an Application for Permit to Drill (APD). Federal defendants prepared a draft Environmental Impact Statement (EIS) on the APD in February, 1984, and completed a second draft in October 1984 and a Final EIS in March 1985. They held public meetings to discuss these documents on September 27, 1983, October 19, 1983, March 21, 1984, April 21, 1984, May 1, 1984, May 2, 1984, and November 8, 1984. At the conclusion of this process the BLM granted intervenors a limited right to drill an exploratory oil and gas well at North Fork on an untimbered ridge located 28 miles west of Cody, Wyoming, and 26 miles east of Yellowstone National Park, access to which was to be obtained only by helicopter transport from a staging area situated on an abandoned quarry site near U.S. Highways 14, 16 and 20 about a mile or two from the drill site.

Plaintiffs appealed this decision to the IBLA, which decision is still pending. However, when the IBLA denied plaintiffs' motion to stay the drilling pending outcome of the appeal, plaintiffs filed suit in this Court. Plaintiffs contend that the actions of the BLM and the Forest Service violated

NEPA and the Endangered Species Act, 16 U.S.C. § 1531, et seq. Specifically, plaintiffs contend:

(1) That an EIS, rather than an Environmental Assessment, should have been prepared for the entire lease area,

(2) that the EIS on the APD itself is inadequate, and,

(3) that the Endangered Species Act was violated.

The Court has studied each of these issues, and concludes that plaintiffs have failed to prove their claims. Plaintiffs failed to establish irreparable harm either to themselves or the environment. Plaintiffs' witnesses testified to some unspecified fears about inability to take hunters or sportsmen into the North Fork area, and possible problems with air and water quality. Nothing testified to by these witnesses convinced the Court that the Environmental Assessment and EIS were erroneous in concluding that there will be no irreparable harm to the environment or plaintiffs. Without such a showing, a preliminary injunction would be improper. *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir.1980).

Moreover, the proof clearly showed that if intervenors cannot drill quickly, they will suffer substantial losses. · Intervenors have demonstrated that they have made a substantial investment of over $1,000,000 preliminary to drilling the test well. They have also shown that unless they commit to contracting for the only known drilling rig in North America that can be disassembled to permit helicopter access, they will be precluded from conducting approved activities during the 1985 Field Season. Delays in completing these approved activities could result in losses exceeding $500,000. Also, the evidence showed that the public interest favors development of energy resources on federal lands after thorough studies have been completed and when carefully supervised restrictions are placed upon those activities. In light of this evidence the Court concluded that plaintiffs failed in their proof on both the balance of harm and public interest, which is a prerequisite for a preliminary injunction. *Lundgrin,* 619 F.2d at 63.

Finally, as the Court's decision on the merits will show, the Court concluded that plaintiffs had no substantial likelihood of prevailing on the merits, and therefore the motion for preliminary injunction was denied.

■ Plaintiffs' first claim is that an EIS, rather than an Environmental Assessment, should have been prepared on the entire lease. Defendants contend that this claim is barred by the 90-day statute of limitations contained in the Mineral Lands Leasing Act. The Court agrees. The statute, which is contained in 30 U.S.C. § 226-2, reads as follows:

No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within 90 days after the final decision of the Secretary relating to such matter.

There is no question that the July 9, 1982 BLM decision on Federal Oil and Gas Lease W-73230 was a decision of the Secretary, and since no party appealed within 30 days pursuant to 43 CFR §§ 4.410 and 4.411, the decision was final, at the latest, on August 8, 1982. There is also no question the plaintiffs knew of the lease decision for a long time prior to their filing date in this case of June 3, 1985. Plaintiffs became aware not later than fall of 1983 that the lease had been issued without preparation of an environmental impact statement. Notwithstanding that knowledge, neither plaintiffs nor any other party challenged issuance of the lease in administrative or judicial proceedings until May 31, 1985, when the IBLA received plaintiffs' Formal Notice of Appeal on the APD.

Even giving plaintiffs the benefit of the doubt that they were unaware of the lease in 1982 or 1983, plaintiffs' own evidence shows that the Park County Resource Council, the plaintiff Stan Siggins and their counsel, Patrick Marley, had complained to the BLM about the legality of the lease in the initial comment period, and as of December 1, 1984 were still objecting that the

EIS only covered the North Fork Well, and not the entire lease. *See* Plaintiffs' Proposed Exhibit # 8.

■ Either May 31 or June 3, 1985 are well over 90 days from December 1, 1984. The question of whether or not an EIS was needed for the original leasing decision is therefore time-barred by 30 U.S.C. § 226–2. The purpose of this 90-day period is to establish a statute of limitations and to provide stability and remove clouds from titles to federal oil and gas leases. S.Rep. No. 1549, 86th Cong., 2d Sess. 4, *reprinted in* 1960 U.S.Code Cong. & Ad.News 3313, 3317; Conf.Rep. No. 2135, 86th Cong.2d Sess. 3, *reprinted in* 1960 U.S.Code Cong. & Ad.News 3337. Plaintiffs would have this Court rule that § 226–2 does not apply in NEPA cases, but they provide no case law to support their position. There is no exception in § 226–2 itself. The statute is clear and unambiguous that no action contesting an oil and gas lease decision shall be maintained unless taken within 90 days. It is the duty of this Court to apply the law as set down by Congress. In the absence of any ambiguity, the Court concludes that on its face § 226–2 applies to plaintiffs' claim.

This Court has stated in a prior decision, "[p]redictability and certainty of title are mandatory to the entire oil and gas leasing system.... Title to thousands of oil and gas leases could be clouded by protest proceedings. Such confusion would be contrary to the expressed statutory intent of the Minerals Leasing Act." *Geosearch, Inc. v. Andrus*, 508 F.Supp. 839, 845 (D.Wyo.1981). Although referring to an oil and gas lease lottery challenge, NEPA challenges could be just as devastating to the necessity for clear title. Without a statute of limitations to provide some certainty in this area, the express Congressional intent to allow oil and gas leasing in multiple-use areas would be impaired.

■ Even in the absence of an express statute of limitations, the Court concludes that the equitable doctrine of laches would apply in this case. The evidence presented at the two hearings in this matter has convinced the Court that the plaintiffs not only knew of their claim, but also were so convinced that the APD would never be granted that they decided to sit on the lease EIS issue until after the decision on the APD. Although the Court sympathizes with plaintiffs' belief that the APD decision was incorrect, it cannot condone a decision to delay in the filing of a known claim, especially when to allow that claim would so prejudice the intervenors. *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir.1982). Moreover, by deciding to wait for the APD decision, plaintiffs allowed their time for appeal to the IBLA to run out. 43 C.F.R. § 4.411. Under the doctrine of failure to exhaust administrative remedies, plaintiffs would again be barred from raising the issue of the need for an EIS on the original lease. *Winkler v. Texoma Production Co.*, 758 F.2d 1360 (10th Cir.1985).

■ Finally, even if plaintiffs could properly raise the lease EIS issue, the Court concludes that they must fail on the merits. Under NEPA an EIS must be prepared only for major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). The threshold decision of whether or not a proposed action requires an EIS is left to the discretion of the agency, and should only be overturned by the courts if demonstrated to be arbitrary, capricious or unreasonable. *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678 (D.C.Cir.1982); *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir.1972); *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973).

■ Before issuing the lease the BLM studied the issue carefully. It relied on a complete Environmental Assessment in concluding that the lease issuance itself—not possible future drilling thereon—would have no significant impact on the human environment. The Environmental Assessment fully discusses all reasonable alternatives, including the alternative to refrain from lease issuance. It evaluates the potential effects of all alternatives on the

environmental constituents. It identifies stipulations that may be imposed in issuance of a lease to protect the environment. The Court cannot say that this decision was arbitrary or capricious. The Court agrees with the following conclusion of the Regional Forester:

Few issued leases result in active exploratory operations. Still fewer result in discovery or production of oil or gas. The act of issuing a lease involves no physical or biological impacts. The cumulative environmental effect of lease issuance on a Region-wide basis is very small. *Nov. 7, 1979 Decision Notice and Finding of No Significant Impact.*

■ When considered in light of the Limited Surface Use Stipulation imposed on lessees, and the fact that the BLM reviewed public comment and discussed several alternatives, the Court can only conclude that the agency did its job. Courts have a limited role in reviewing agency decisions, and a decision not to prepare an EIS will only be overturned if it was not "fully informed and well considered." *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d at 684. Plaintiffs have not carried their burden of convincing the Court that the federal defendants failed in their duties. From its own review of the evidence, the Court concludes that the decision not to prepare an EIS for the original lease, was sound.

■ Plaintiffs also contend that the EIS issued for the North Fork Well is inadequate. Again, the Court is not convinced that plaintiffs have carried their burden of proof. The lands in question are not Wilderness Areas. They are not pristine, or primitive, or even very unusual. There are many roads, including a major highway and an old gravel pit, just a short distance away. Congress has had three chances in recent years to incorporate these lands into a Wilderness Area, but each time has refused to do so, including in 1984 when the lands in question were once again classified as multiple-use areas in the Wyoming Wilderness Act. Although plaintiffs would prefer that the lease area only be used for recreational purposes, multiple-use does include oil and gas drilling.

The Final EIS identifies a full range of alternatives, including the "no action" alternative preferred by plaintiffs. It evaluates the potential environmental consequences of each of those alternatives on a whole range of environmental parameters, including air and water quality, soils and vegetation, and social and economic conditions. The EIS also specifies a series of mitigation requirements calculated to minimize any potential environmental consequences, and addresses the "worst case" scenario of a blowout.

Federal defendants also prepared a biological assessment and initiated formal consultation with the United States Fish and Wildlife Service, as contemplated by the Endangered Species Act. The U.S. Fish and Wildlife Service rendered a formal biological opinion which concluded that the proposed action would not jeopardize the continued existence of endangered or threatened species. In light of all this information, the EIS concludes that the preferred alternative is approval of the Marathon APD.

As mandated by § 706(2)(D) of the Administrative Procedure Act, courts have a very limited role when addressing the question of the adequacy of an EIS. "Judicial review of an EIS covers only the issue of whether NEPA's procedural requirements have been met, and whether the EIS performs its primary function of presenting the decision-maker with an environmentally-informed choice." *Save Lake Washington v. Frank,* 641 F.2d 1330, 1334 (9th Cir.1981). Although they point out that there is room for disagreement on the ultimate decision, plaintiffs' contentions of specific procedural violations do not stand up under scrutiny. Despite plaintiffs' reservations, the federal defendants clearly took the required "hard look" at the potential environmental consequences of the proposed action.

■ Plaintiffs contend that the North Fork EIS is inadequate because it does not

consider the effects of full field development, but only discusses the one exploratory well. The first problem with this contention is that the BLM was perfectly justified in dealing with the question presented to it, and not with the speculation that oil might be discovered, and that sometime in the future an entire field could be developed. *See e.g., Cabinet Mountains Wilderness v. Peterson,* 510 F.Supp. 1186, 1190 (D.D.C.1981), *aff'd* 685 F.2d 678 (D.C. Cir.1982). If oil is discovered and future development and drilling becomes a real possibility, further study will be needed. However, at this time only one exploratory well will be drilled, and the EIS prepared regarding that well is adequate.

Moreover, even though a limited EIS would have been sufficient, the EIS study area consisted not of just the small drill site area, but of approximately 39,000 acres in the Shoshone National Forest. *Final EIS,* at p. 5. Appendix E of the EIS includes a complete discussion of full field development. Without the further data which will be provided by the drilling of exploratory wells, it is difficult to see how a full field EIS could accomplish anything more than what is already set out in the North Fork EIS. Since full field development will not be allowed without further study, the Court concludes that the North Fork EIS is adequate.

Plaintiffs also contend that the EIS failed to adequately consider the possible alternatives. The Court finds that Chapter III does adequately address not only alternative drilling sites, but a no action alternative as well. Plaintiffs' contention that the EIS fails to address a worse case analysis also lacks merit. Pages 53–55 of the EIS discuss the very situation, namely, a blowout of the well, which plaintiffs contend is the worst case scenario.

■ Finally, plaintiffs allege that the Section 7 consultation and biological opinion provided by the Fish and Wildlife Service on the APD violates the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq. Plaintiffs contend that the EIS fails to provide adequate protection for the grizzly bears present in the area. The Court must disagree. The BLM consulted with both the State and Federal Wildlife Services, and imposed such restrictions as no roads and limited drilling times from June 21, 1985 to December 1, 1985. *See* EIS at 42–44, and *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d at 687. The superintendent of the Shoshone Forest is himself an expert on grizzly bears and testified, at request of plaintiff, that no harm to the bears would occur. That evidence is unrebutted. Overall the Court cannot say that the agency's actions, pursuant to the ESA, were arbitrary or capricious. The Court finds that adequate measures were taken for the protection of endangered species.

In dismissing plaintiffs' claims, the Court is guided by the language of the United States Supreme Court in *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978):

> NEPA does set forth significant substantive goals for the Nation, but its mandate is essentially procedural. It is to insure a fully informed and well-considered decision, not necessarily a decision the judges of the Court of Appeals or of this Court would have reached had they been members of the decisionmaking unit of the agency. Administrative decisions should be set aside in 'this context, as in every other, only for substantial procedural or substantive reasons as mandated by statute, and not simply because the court is unhappy with the result reached." (Citations omitted.)

The Court is sympathetic with plaintiffs' concerns. However, all they have proven is that a "no action" alternative would better suit their wishes, vocations, or lifestyles. None of the eight witnesses called by plaintiffs and none of the affiants, whose affidavits plaintiffs presented, identified any real factual objection to the documents prepared by the federal defendants prior to rendering their decisions on the lease and APD. They suggested no other mitigation features that could reasonably have been imposed, identified no significant

omissions in the administrative record, nor suggested how yet another EIS would differ from the one recently prepared. To the contrary, as admitted by a number of plaintiffs' witnesses, plaintiffs' quarrel is with the decision to permit exploration activities on the lease, not the administrative record on which the decisions objected to are based. The Court can only set aside an EIS upon a showing of clear NEPA violations, and the Court must conclude that plaintiffs have failed to uphold this burden. Therefore, it is

ORDERED that plaintiffs' motion for preliminary injunction be, and the same hereby is, denied. It is further

ORDERED and ADJUDGED that plaintiffs' claims be, and the same hereby are, dismissed with prejudice.